IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 13, 2004 Session

## KENNETH PAUL DYKAS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Rutherford County**
**No. F-53007     J. Steve Daniel, Judge**

---

**No. M2003-01490-CCA-R3-PC - Filed February 17, 2004**

---

The petitioner contends on appeal that he was denied the effective assistance of counsel during the trial of his case.  In making his claim, the petitioner alleges ineffective assistance in three areas: (1) failure of counsel to effectively conduct voir dire, (2) inadequate preparation for and examination of witness Riggan, and (3) failure to prepare the petitioner to testify.  We affirm the post-conviction court's denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., JJ., joined.

Terry A. Fann, Murfreesboro, Tennessee, for the appellant, Kenneth Paul Dykas.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; and William C. Whitesell, Jr., District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A jury found the petitioner, Kenneth Paul Dykas, guilty of premeditated first-degree murder, especially aggravated robbery, and conspiracy to commit especially aggravated robbery.  This Court affirmed the judgments of the trial court on direct appeal.  State v. Kenneth Paul Dykas, No. M2000-01665-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 160 (Tenn. Crim. App., at Nashville, Mar. 5, 2002).  On October 3, 2002, the petitioner filed a *pro se* petition for post-conviction relief.  Counsel was appointed, and following a hearing, the post-conviction court dismissed the petition.  The petitioner timely filed his notice of appeal.  He contends on appeal that he was denied the effective assistance of counsel during the trial of his case.  We affirm the post-conviction court's denial of post-conviction relief.

## Facts

The following factual account is taken from the direct appeal opinion cited supra. Early in 1998, the petitioner and his girlfriend had taken up residence at the Jackson Motel in Murfreesboro, Tennessee. The victim, Donald Greenwood, who was sixty-nine years old and suffered from Parkinson's Disease, had rented a room at the motel to be closer to the Veterans' hospital where he was being treated. On the day that the victim settled into his room, he was befriended by the petitioner and his girlfriend. According to the girlfriend, she and the petitioner planned on getting the victim drunk and taking his money. While the three of them were sitting around a table in the motel room, the petitioner suddenly struck the victim in the head with a claw hammer. The girlfriend attempted to determine if the victim was still alive and detected a pulse. The petitioner proceeded to strike the victim repeatedly until he was dead. The perpetrators then removed $370 from the victim's wallet and returned to their room. Following a jury trial, the petitioner was found guilty of premeditated first degree murder, especially aggravated robbery, and conspiracy to commit especially aggravated robbery. The jury sentenced the petitioner to life without the possibility of parole. At a separate sentencing hearing, the trial court sentenced the petitioner to eleven years on the conspiracy conviction and twenty-four years on the especially aggravated robbery conviction. As noted supra, the judgments of the trial court were affirmed on direct appeal.

## Post-Conviction Hearing

Both of the petitioner's trial attorneys and the petitioner testified at the post-conviction hearing. One of the attorneys stated that he had spent approximately 250 hours preparing for trial. The trial attorneys stated that they did not familiarize themselves with the rules regarding challenges to alternate jurors prior to or during jury selection. Before the trial began, one of the jurors, Mr. Parrish, was excused because of his religious convictions. The defense wanted to strike the alternate juror, Ms. Pierce, after she was seated on the jury to replace Mr. Parrish. Ms. Pierce stated that her daughter had been the victim of a violent crime, and she did not have sympathy for those involved in criminal activities. Despite the prior incident, Ms. Pierce indicated that she could set aside all of the prior events and decide the case on a fair and rational basis. The defense attorneys were unable to strike Pierce at that time, because they did not realize that they were allowed only one peremptory challenge per alternate chair.

The attorneys testified that they never made a recommendation to the petitioner as to whether he should testify. They explained to him the pros and cons of testifying, and he made the decision not to testify. They also discussed the topics that might be asked by the prosecution on cross-examination if he did choose to testify. On more than one occasion, they talked with the petitioner about testifying. Throughout the proceedings, the petitioner stated that he did not plan to testify. At one point, early in the trial when the prosecuting attorney was conducting a rebuttal examination of a witness, the petitioner asked his defense lawyers if the same prosecuting attorney would question the petitioner on cross-examination if he testified. When the defense team said that they believed that was the case, the petitioner stated, "I know I don't want to testify."

The petitioner testified that he spent approximately ten hours meeting with the attorneys assigned to his case. He wanted them removed just prior to trial because he felt that they were not spending enough time meeting with him. The petitioner met with the attorneys a few days before trial. They asked him if was going to take the stand and never told the petitioner that he could not testify. He stated that he chose not to testify because the attorneys had not prepared him. He also admitted that he never conveyed to his attorneys that he wanted to testify. The petitioner said that he thought it would be too late to testify at the close of the State's case. Additionally, he said that he did not want to testify at sentencing, because he did not want the jury to see any pictures of the crime scene.

## Analysis

The petitioner contends that he received ineffective assistance of counsel during the trial of his case. In making his claim, the petitioner alleges ineffective assistance in three areas: (1) failure of counsel to effectively conduct voir dire, (2) inadequate preparation for and examination of witness Riggan, and (3) failure to prepare the petitioner to testify. We conclude that the post-conviction court properly denied the petitioner post-conviction relief.

When a claim of ineffective assistance of counsel is made under the Sixth Amendment, the burden is upon the complaining party to show that (1) counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court required that the services be rendered within the range of competence demanded of attorneys in criminal cases. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Nichols v. State, 90 S.W.3d 576, 587 (Tenn. 2002).

It is unnecessary for a court to address deficiency and prejudice in any particular order or even to address both if the petitioner makes an insufficient showing on either. Strickland, 466 U.S. at 697, 104 S. Ct. at 2069. In order to establish prejudice, the petitioner must establish a "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999) (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068) (citations omitted).

The petitioner bears the burden of proving the factual allegations that would entitle the petitioner to relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). We review the post-conviction court's factual findings underlying a claim of ineffective assistance of counsel under a *de novo* standard with a presumption that those findings are correct – unless the preponderance of the evidence establishes otherwise. Burns, 6 S.W.3d at 461. However, the post-

conviction court's conclusions of law – such as whether counsel's performance was deficient or whether that deficiency was prejudicial – are reviewed under a *de novo* standard with no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457 (Tenn. 2001) (citations omitted).

The petitioner first contends that he received ineffective assistance due to his trial attorneys' inability to conduct proper voir dire during jury selection. Although the post-conviction court did find that the petitioner's attorneys' lack of knowledge of the rules regarding alternate juror selection fell below the level of competency required of an attorney during a first degree murder trial, the court did not find that the petitioner established prejudice. The jury selection issue was discussed extensively in the direct appeal, and this Court held that "the defendant has shown us no prejudice from the removal of Juror Parrish or the seating of Juror Pierce." Dykas, 2002 Tenn. Crim. App. LEXIS 160 at *21-27. The post-conviction hearing did not establish that the petitioner was prejudiced by the seating of Jurors Parrish and Pierce. The petitioner is not entitled to relief on this issue.

Next, the petitioner contends that trial counsel was ineffective in the preparation for and examination of witness Riggan. This issue was not raised in the petition for post-conviction relief and was not ruled on by the post-conviction court. As a general rule, this Court will not address post-conviction issues that were not raised in the petition or amended petition. See State v. Smith, 814 S.W.2d 45, 49 (Tenn. 1991). The petitioner is not entitled to relief on this issue.

The petitioner also claims ineffective assistance because of his trial attorneys' failure to prepare him to testify at trial. Although the petitioner acknowledges that he validly waived his right to testify in open court, he contends that he did so because he was unprepared. Both of the petitioner's trial attorneys testified at the post-conviction hearing that they explained to the petitioner the pros and cons of testifying, and he made the decision not to testify. The petitioner never expressed any desire to testify until the post-conviction proceedings. He admitted that he told his attorneys he did not want to testify. The post-conviction court found that the petitioner's attorneys' explanation of the pros and cons of testifying was well within the range of competence for criminal defense attorneys. The evidence does not preponderate against the findings of the post-conviction court. The petitioner is not entitled to relief on this issue.

## Conclusion

Based on the foregoing reasoning and the record as a whole, the judgment of the post-conviction court dismissing the petition for post-conviction relief is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE